Filed 7/2/21  In re Eduardo P. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re EDUARDO P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDUARDO P.,<br><br>Defendant and Appellant. | F081554<br><br>(Super. Ct. No. JW120880-00)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Lorna H. Brumfield, Judge.

Ponce Law Group and Roger Humberto Ponce, Jr., for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P.J., Franson, J. and Smith, J.

# INTRODUCTION

Minor Eduardo P. appeals from the juvenile court's jurisdictional and dispositional orders, which sustained a Welfare and Institutions Code section 602 petition based on the allegation that minor brandished a firearm (Pen. Code,[1] § 417, subd. (a)(2)(A)), and which committed minor to probation, including a 15-day term in juvenile hall.

On appeal, minor contends the evidence was insufficient to sustain the allegation that he brandished a firearm, and the court abused its discretion in excluding evidence that tended to affect the victim's credibility. We conclude the evidence is sufficient to sustain the allegation. We also conclude that any error in the exclusion of the challenged evidence was harmless. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On June 14, 2019, the Kern County District Attorney filed a juvenile wardship petition (Welf. & Inst. Code, § 602), alleging that minor made criminal threats (§ 422; count 1) and unlawfully drew or exhibited a knife (§ 417, subd. (a)(1); count 2).

On January 27, 2020, the parties appeared for a jurisdictional hearing. At that time, the court granted the People's motion to dismiss count 2 and to add the allegation that minor brandished a firearm (§ 417, subd. (a)(2); count 3).

At the jurisdictional hearing, Marvin F.[2] testified in the People's case. He testified that, at one time, he lived in the same apartment complex as minor and his father. However, Marvin moved out of the complex after a couple of months due to an "incident." Approximately two weeks after Marvin moved out, on the afternoon of November 3, 2018, Marvin went with his 12-year-old son to a retail store to buy ice. While Marvin went inside the store, his son stayed in the parking lot in Marvin's Jeep.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Pursuant to California Rules of Court, rule 8.90, we refer to Marvin by his first name. No disrespect is intended.

When Marvin exited the store, he saw minor's father and minor's father's friend in a dark colored Toyota or Honda sedan in front of the store. Minor's father and the friend called Marvin names. As Marvin walked away, minor's father exited the driver's side of the vehicle and the friend exited the passenger side. Minor's father told the friend to shoot Marvin and the friend took out a revolver and pointed it at Marvin. Marvin ran to his own vehicle, where he opened the rear passenger door and grabbed a stick. Minor's father and the friend followed Marvin on foot, and minor's father again told the friend to shoot Marvin. However, the friend noticed that people were looking at him and the friend ran back to the car.

Marvin drove away and, after making a few turns, noticed the car he had seen in the parking lot was in front of him. Marvin denied that he was following the vehicle. Marvin called 911, who told Marvin to stop following the vehicle and to park at a gas station. Marvin complied and waited at the gas station for officers to arrive. The gas station was located next door to the apartment complex where Marvin used to live.

Approximately 30 to 40 minutes later, while Marvin waited for police, he saw minor, his father, and another friend in a white Honda Civic, a different vehicle than he had seen earlier. The friend, who was unknown to Marvin, was driving and minor's father was in the front passenger seat, with minor in the rear passenger seat. Marvin immediately called 911. Marvin tried to pull out of the gas station when he saw the vehicle, but the vehicle blocked him in. Minor and his father got out of the car and, as they did so, Marvin saw minor and his father holding guns. The driver of the car pointed a gun at Marvin and his son. Marvin had his windows closed and was on the phone with 911. Minor and his father went toward the passenger side of Marvin's vehicle but remained 15 to 20 feet away. They had guns behind their backs, which Marvin testified he could see.

Marvin testified that minor and his father were saying things that Marvin could not hear due to the windows being up and Marvin being on the phone. However, he later

3.

testified that he told an officer that they were yelling something along the lines of "I'm going to kill you," and he confirmed that this had occurred. On cross-examination, Marvin clarified that he did not hear minor say that he was going to shoot Marvin.

Once minor and his father saw that Marvin was on the phone, they ran to their car and drove off. Marvin drove off as well, but stopped when he was flagged down by an officer.

On direct examination, Marvin testified that he never spoke with minor or his father while they lived at the same apartment complex. However, on cross-examination, he was shown a video that purported to show him speaking with minor and his father. Marvin then explained that he spoke on one occasion with minor, his father, and the friend who first confronted Marvin, when he was "jumped" by them. According to Marvin, the three approached him smelling of alcohol, and minor proclaimed he was a gangster and asked Marvin if he wanted to fight.

Minor's counsel also showed Marvin photographs of Marvin speaking with minor and his father on another occasion. Marvin explained that, on that occasion, he spoke with minor's father in minor's presence after being told that they broke into his Jeep. Marvin denied threatening minor or his father or having weapons during any of his prior encounters with minor and his father. He also denied that he ever went to minor's high school to see minor.

At the conclusion of the People's evidence, the court granted minor's motion to dismiss count 1 for lack for evidence, but denied the motion to dismiss count 3. (Welf. & Inst. Code, § 701.1.)

Minor's counsel then stated his intent to present testimony from a 911 operator and police officer regarding an incident in which minor and his father called 911 to report that Marvin pulled a knife in their presence. Counsel represented that the testimony was relevant to impeach Marvin's credibility and to show that he was motivated to fabricate the allegations against minor. The court disallowed the testimony as hearsay and

4.

irrelevant. The court also excluded as irrelevant testimony from a witness who would testify that, on an unknown date, he walked home from school with minor and saw Marvin across the street from the high school, staring at minor.[3]

Minor testified on his own behalf. When asked about the video of him and his father speaking with Marvin, minor could not recall the date it occurred. Minor denied holding a firearm on November 3, 2018, or at any other time. He denied being with his father or knowing his father's whereabouts on November 3, 2018. However, he testified that his father lived in Bakersfield on that date.

The People called Sergeant Torres of the Bakersfield Police Department as a rebuttal witness. Torres testified that he interviewed minor and his grandmother on November 27, 2018. During that interview, minor reported that his father lived in Mexico.

At the conclusion of the hearing, the court found true the allegation in count 3 that minor had brandished a firearm in violation of section 417, subdivision (a)(2).

On June 17, 2020, the juvenile court held a disposition hearing, adjudged minor a ward of the court, and granted probation not to exceed minor's 21st birthday. Additionally, as a term of probation, minor was to serve 15 days in juvenile hall.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE TO SUSTAIN THE ALLEGATION

Minor contends the People failed to prove all elements of brandishing a firearm because the evidence was insufficient to establish beyond a reasonable doubt that minor drew or exhibited a firearm. Specifically, minor contends Marvin's testimony that he saw minor holding a firearm behind his back was impossible or improbable, and there was no evidence the object that minor exhibited, if any, was a real firearm. We disagree.

---

[3] The People pointed out that Marvin testified his other son attended the same high school.

5.

When reviewing the sufficiency of the evidence in proceedings before the juvenile court, we apply the same standard of review as in criminal cases. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) "The test for evaluating a sufficiency of evidence claim is deferential: 'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We must 'view the evidence in the light most favorable to the People' and 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] We must also 'accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence.' " (*People v. Flores* (2020) 9 Cal.5th 371, 411 (*Flores*).)

"[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181; see Evid. Code, § 411.) " 'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]' " (*People v. Thornton* (1974) 11 Cal.3d 738, 754 (*Thornton*), disapproved on another ground in *People v. Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12; accord, *People v. Gomez* (2018) 6 Cal.5th 243, 280-281.)

Here, Marvin testified that he saw minor and his father exit a vehicle at the gas station with guns behind their backs. He later clarified that he clearly saw minor holding a gun as minor exited the car, before minor put the gun behind his back. Marvin also explained that, because his Jeep is "lifted," he had a good angle and was able to see the gun as minor held it behind his back. There is no inherent improbability or impossibility in Marvin's testimony. The trier of fact could reasonably have accepted Marvin's

description of seeing the gun before minor put it behind his back, as well as his description of seeing the gun behind minor's back from an elevated angle as minor moved around the vehicles. At most, this testimony is subject to " 'justifiable suspicion,' " which is insufficient to require reversal of the judgment. (*Thornton*, *supra*, 11 Cal.3d at p. 754.)

Additionally, Marvin's testimony constituted sufficient circumstantial evidence to prove the firearm was real. The existence of an actual firearm may be established by circumstantial evidence alone, as is commonly the case. (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435-1436 [collecting cases]; accord, *People v. Green* (1985) 166 Cal.App.3d 514, 517.) A trier of fact reasonably could infer from Marvin's testimony regarding minor's conduct and what Marvin observed to be a gun that the object minor possessed was a real firearm. (See *Flores*, *supra*, 9 Cal.5th at p. 411 [we must " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence' "].)

Accordingly, we conclude substantial evidence supports the juvenile court's finding that minor violated section 417, subdivision (a)(2) by brandishing a firearm.

## II.    EXCLUSION OF EVIDENCE

Minor contends the juvenile court abused its discretion in excluding witness testimony from a 911 operator and a Bakersfield police officer who would have testified regarding minor's report of an incident that occurred in June 2018, in which Marvin allegedly "pulled a knife." We conclude any error in excluding this evidence was harmless.

### A.    Additional Factual Background

At the close of the People's evidence, minor's counsel stated his intent to call a 911 operator to authenticate the audio recording of a 911 call, which counsel represented was made by minor and his father on June 8, 2018, and in which they reported Marvin was "in their presence and had pulled a knife at one point." Minor's counsel represented

7.

that minor would testify this call occurred on the same date as the photographs and video showing Marvin speaking with minor and his father. Counsel represented that he had an additional witness who would testify that there was an ongoing conflict between Marvin, minor, and minor's father, and that Marvin intended to cause minor harm. Counsel additionally stated that he wished to call a Bakersfield police officer to testify that minor made a police report regarding the June 8, 2018 incident and to testify to minor's statements. Minor's counsel argued that this evidence was relevant to show an ongoing dispute between Marvin and minor, and that Marvin's accusations against minor in the instant case therefore were false. The People objected, arguing the proposed evidence was hearsay and not subject to any exception, and that the evidence was distant in time from the November 3, 2018 incident and therefore not relevant. The court excluded the evidence for the reasons stated by the People.

## B. Applicable Law

In proceedings on a Welfare and Institutions Code section 602 petition, "[t]he admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision." (Welf. & Inst. Code, § 701.)

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Hearsay evidence is inadmissible, unless an exception applies. (Evid. Code, § 1200, subd. (b); *People v. Sanchez* (2016) 63 Cal.4th 665, 674.)

Relevant evidence is "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Relevant evidence is admissible, unless otherwise provided by statute. (Evid. Code, §§ 350, 351.)

8.

Unless a trial court's erroneous evidentiary ruling deprives a defendant of the ability to present a defense, the error is harmless unless it is reasonably likely the defendant would have obtained a more favorable outcome absent the error. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1325; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

**C.      Analysis**

We conclude that any error in excluding minor's proposed evidence was harmless, as there is no likelihood minor would have obtained a more favorable outcome had the evidence been admitted.

Minor sought to introduce evidence of a 911 call purported to have been made by minor in June 2018, as well as statements minor made to a police officer on the same date, to attack Marvin's credibility by demonstrating Marvin had a hostile relationship with minor and his father dating back to at least June 2018. Such testimony would be contrary to Marvin's initial testimony that he never spoke with minor and his father while they lived at the same apartment complex. However, minor's counsel had already elicited testimony from Marvin acknowledging that this testimony was false, and that Marvin had contentious encounters with minor and his father on at least two occasions prior to November 3, 2018.

Indeed, the court acknowledged that "the victim might not have been completely credible and up front. It was obvious there was bad blood between these two people . . . ." The court later reiterated, that Marvin "definitely had some credibility issues" and "clearly did not care for [minor] or his father." Nonetheless, the court had "a hard time believing that [Marvin] had so much animus toward [minor] and his dad that he decided one day . . . just to make up this whole story and call 911 . . . ." The court ultimately concluded, "I don't believe that he just made all of this up." The court noted that Marvin would be "putting himself through a lot just to get back at [minor], and he

9.

seemed genuinely in fear when he was on the witness stand and upset about this, and I believe that he had a gun pulled on him that day and that this incident happened to him."

In other words, the court was aware that Marvin and minor had a hostile relationship prior to November 3, 2018, and that Marvin's testimony was not entirely credible. Nonetheless, the court concluded that minor brandished a firearm as alleged. There is no likelihood that evidence of a hostile encounter between Marvin and minor in June 2018 would have altered the court's determination. Nor can we conclude that the exclusion of this evidence deprived minor of his right to present a defense, given that minor's counsel established Marvin's lack of credibility and animosity toward minor, and the court accepted those facts as true. (See *People v. Dement* (2011) 53 Cal.4th 1, 51-52 [right to present a defense not violated, where the defendant was given "considerable leeway" to challenge a witness's veracity and suggest his motivation to lie, but was precluded from presenting evidence that was time-consuming, remote, and not obviously probative], overruled on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

Accordingly, we conclude any error in excluding minor's proffered evidence was harmless.

## DISPOSITION

The jurisdiction and disposition orders are affirmed.